301 Ga. 829
FINAL COPY

S17A0954.  WILLIAMS v. THE STATE.

HUNSTEIN, Justice.

Appellant Deron Williams was convicted of malice murder and related offenses in connection with the bludgeoning death of Decarla Lomax.[1]  On appeal, Williams argues that the trial court erroneously admitted the record of his first offender plea, that he is entitled to a new trial because of a discovery violation, that his trial counsel was ineffective, and that he was improperly sentenced as a recidivist.  Though we find no reversible error with respect to Williams' trial, we agree that the trial court erred in regard to Williams'

---

[1] In July 2012, a Cobb County grand jury returned an indictment against Williams charging him with malice murder, two counts of felony murder, aggravated assault, aggravated battery, and armed robbery.  Following a trial conducted November 5-9, 2012, a jury found Williams guilty of all offenses except armed robbery.  The trial court sentenced Williams as a recidivist to life imprisonment without the possibility of parole for malice murder; all other counts were properly merged or vacated by operation of law.  Williams thereafter timely filed a motion for new trial on November 19, 2012, which he subsequently amended on July 21, 2015.  Following a hearing, the trial court denied Williams' motion for new trial in an order filed in March 2016.  Williams filed a timely notice of appeal shortly thereafter, and this appeal was docketed to the April 2017 term of this Court.  The Court heard oral argument in the case on May 2, 2017.

sentence.

Viewed in a light most favorable to the verdicts, the evidence adduced at trial established as follows. Williams and Lomax had a years-long on-again, off-again romantic relationship, during which Williams threatened and assaulted Lomax on numerous occasions. The jury heard extensive testimony concerning the tumultuous and violent relationship and also learned that, in the months leading up to the murder, Williams had threatened to kill Lomax. On the day of the murder, Williams traveled with Lomax to Cobb County where she was in the process of moving out of a mobile home. According to Williams' trial testimony, the pair argued, and he "blacked out" after the victim stated that she was sleeping with other men. Williams testified that he remembers strangling her and hitting her approximately four times with a hammer. After fleeing the residence in Lomax's vehicle, Williams contacted various family members and indicated that he had "accidentally" killed Lomax. The victim was discovered dead in the Cobb County mobile home; her death was ruled a homicide caused by blunt-force trauma to the head. The murder weapon was never recovered.

1. Though Williams does not challenge the legal sufficiency of the evidence supporting his conviction, we have reviewed the record and conclude

that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. As discussed above, the jury heard numerous accounts of violent incidents between the parties; one such account came from James Ryan, a close friend of Lomax. Ryan testified without objection that in July 2008, years before Lomax was murdered, Williams attacked Lomax with a hammer and choked her. The jury learned that the attack left Lomax in the hospital and that Williams was later arrested as a result of the incident. During cross-examination, defense counsel elicited testimony from Ryan that Lomax had "requested that the charges be dismissed." In response, the State successfully moved the trial court to admit a certified copy of Williams' first offender plea to the charges arising out of the incident, namely aggravated assault and battery. On appeal, Williams continues to argue that the certified copy of the first offender plea was inadmissible because it was not a "conviction." We conclude, however, that there is no reversible error.

The admission of evidence is committed to the sound discretion of the trial

3

court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion. See Young v. State, 297 Ga. 737 (2) (778 SE2d 162) (2015).

As this Court has explained before, "[a] first offender's guilty plea does not constitute a 'conviction' as that term is defined in the Criminal Code of Georgia." (Citation omitted.) Davis v. State, 269 Ga. 276, 277 (496 SE2d 699) (1998). As such,

> the first offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered.

Id. It does not follow, as Williams seems to suggest, that a first offender plea is *never* admissible as impeachment evidence. Indeed, this Court has recognized that a first offender record is admissible as impeachment evidence to disprove or contradict facts so that a jury is not misled by false or deceiving testimony. Id. See also Carruth v. State, 290 Ga. 342 (5) (721 SE2d 80) (2012) (first offender record admissible to impeach defendant who claimed he was innocent of the charges underlying the first offender plea). This conclusion is consistent

4

with longstanding law that "a witness may be impeached by disproving facts to which he has testified." Scruggs v. State, 253 Ga. App. 136, 136 (558 SE2d 731) (2001). See also former OCGA § 24-9-82.[2] Under the doctrine of impeachment by contradiction, "[e]ven evidence that would be inadmissible if offered to impeach the defendant's character may be admissible to impeach the veracity of a witness," Scruggs, 253 Ga. App. at 136, and a witness may be impeached on a collateral issue which is only indirectly material to the issue in the case. See Howell v. State, 330 Ga. App. 668 (1) (b) (769 SE2d 98) (2015).

Here, the State was not using the first offender plea record as evidence of the defendant's character or to impeach the defendant on general credibility grounds. Instead, the State sought to utilize the first offender plea record to challenge the veracity of *Ryan*'s testimony, namely the alleged implication that the 2008 charges had been dismissed. See Krebsbach v. State, 209 Ga. App. 474 (1) (433 SE2d 649) (1993) (evidence of defendant's prior conviction for DUI admissible to impeach defendant's father who testified that none of his children, including Appellant, would drive if they had been drinking). Because

---

[2] Georgia's new Evidence Code does not apply here because this case was tried before January 1, 2013.

5

the State was attempting to impeach *Ryan* by contradiction, it is immaterial that the first offender plea does not constitute a conviction. Cf. <u>Williams v. State</u>, 171 Ga. App. 927 (2) (321 SE2d 423) (1984) (juvenile arrest record admissible to impeach by contradiction). It is unclear, however, whether Ryan's testimony that the *victim requested* that the charges be dismissed is contradicted by the first offender plea record that was adduced by the State. In any event, even if the trial court abused its discretion in admitting the plea record, the ruling does not rise to the level of reversible error. As referenced above, the jury heard extensive testimony concerning incidents in which Williams had assaulted Lomax, and the jury was aware that Williams had been arrested in connection with the 2008 incident; further, the evidence that Williams killed Lomax was overwhelming. See <u>Davis</u>, 269 Ga. at 279 ("While it was error to admit the evidence that appellant had entered a guilty plea to the earlier charge, that error does not constitute reversible error in light of the overwhelming evidence of appellant's guilt and the cumulative nature of the erroneously-admitted evidence."). Accordingly, any error was harmless, and Williams is not entitled to relief.

3. During trial, while discussing his autopsy of Lomax, the medical

6

examiner gave his conclusions and opinions regarding the timing and nature of Lomax's wounds, including the positioning of her body when she suffered the respective blows. This information was ostensibly provided to the State before trial commenced, but it was neither provided to the defense by the district attorney in written form nor was it relayed by the medical examiner when he was interviewed by trial counsel. Williams argues on appeal — as he did for the first time in his motion for new trial — that he is entitled to a new trial because the State failed to comply with its discovery obligations under OCGA § 17-16-4 (a) (4) to provide him with a written iteration of the medical examiner's opinions.[3] We disagree.

"If at any time *during the course of the proceedings* it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order [relief]." (Emphasis supplied.) OCGA § 17-16-6. Here, pretermitting whether the State did, in fact, violate its discovery

---

[3] It is undisputed that trial counsel was aware of a *possible* discovery violation during trial *before* the State rested its case. We note, however, that there is no evidence (other than trial counsel's speculation during the motion for new trial hearing), and certainly no finding, that before trial the medical examiner actually provided the State with a written or oral report on his impressions regarding the events surrounding Lomax's murder. See Heywood v. State, 292 Ga. 771 (4) (b) (743 SE2d 12) (2013).

7

obligations, Williams' failure to assert a discovery violation during trial deprived the trial court of an opportunity to evaluate the alleged discovery violation and, if necessary, fashion a remedy. See Garrett v. State, 285 Ga. App. 282 (1) (645 SE2d 718) (2007). Accordingly, this claim is waived, id.,[4] and is not subject to plain error review, see Durham v. State, 292 Ga. 239 (2) (734 SE2d 377) (2012).

4. Williams also argues that trial counsel rendered ineffective assistance when she failed to act once she realized that the State had violated its discovery obligations. According to Williams, though counsel thoroughly reviewed discovery and met with the medical examiner, her failure "to respond, request a continuance, get an expert to refute the medical examiner's testimony, or to request a mistrial" after she realized the discovery violation left Williams "without support for his defense" and "destroyed trial counsel's strategy." There is no merit to this argument.

It is axiomatic that Williams may only succeed on this claim if he demonstrates both that counsel's performance was deficient and that the

---

[4] See also Moss v. State, 275 Ga. 96 (7) (561 SE2d 382) (2002).

deficient performance was prejudicial. See Terry v. State, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). With respect to deficient performance, Williams must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). When reviewing counsel's performance, we "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U. S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011) (quoting Strickland v. Washington, 466 U. S. 668, 689 (104 SCt 2052, 80 LE2d 674) (1984)). As such, "a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" (Citation omitted.) Brown v. State, 288 Ga. 902, 909 (708 SE2d 294) (2011). Regarding the second Strickland prong, in order

> to show that he was prejudiced by the performance of his lawyer, [an appellant] must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

9

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Arnold v. State, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013) (quoting Strickland, 466 U. S. at 694). "If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong." Rector v. State, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009).

Here, the record supports the trial court's conclusion that, though counsel was caught "flatfooted" by the medical examiner's unexpected testimony, trial counsel did not, as Williams suggests, fail to respond. Instead, she engaged in a probing and effective cross-examination of the physician, highlighting the fact that the medical examiner's conclusions were not found in his autopsy report, questioning the physician in such a way as to imply that his "newfound" conclusions were not his own, and emphasizing that the physician's conclusions were limited as they were based on photographs that were supplied by others. Additionally, as the trial court correctly recognized below, trial counsel's cross-examination of the medical examiner actually *furthered* the defense theory that Lomax was killed in the heat of passion during an argument. Trial counsel

elicited testimony that the mortal blows occurred in rapid succession and that, though Lomax suffered injuries to her face, there were no injuries to the *back* of her head. Trial counsel's cross-examination was sound, and her decision not to seek relief from the trial court for a possible discovery violation was not so patently unreasonable that no competent attorney would have chosen it. Brown, supra.

Moreover, Williams has failed to demonstrate prejudice. The gravamen of Williams' claim is that trial counsel should have asked for a continuance and sought the assistance of an expert witness. Williams, however, has failed to demonstrate what trial counsel would have done with the time afforded by a continuance and has failed to proffer any evidence from an expert witness. Accordingly, this claim must fail. See White v. State, 293 Ga. 635, 636 (2) (748 SE2d 888) (2013) (failure to offer evidence of what an expert witness would have opined fatal to prejudice prong of Strickland).

5. Finally, it is undisputed that the trial court utilized first offender pleas to sentence Williams as a recidivist under OCGA § 17-10-7 (c).[5] On appeal,

---

[5] The May 2009 pleas out of DeKalb County included the previously referenced assault on Lomax and a felony theft by taking charge. Nothing before us

11

Williams argues, and we agree, that the trial court erred in this respect. First offender pleas are not a "conviction" as understood in the Criminal Code and, therefore, cannot be used as a conviction for recidivist sentencing purposes. See Davis, 269 Ga. at 277. Accordingly, we vacate Williams' sentence and remand this case for resentencing.[6] See Davis v. State, 273 Ga. 14, 15 (537 SE2d 663) (2000).

Judgment affirmed in part and vacated in part, and case remanded. Hines, C. J., Melton, P. J., Benham, Nahmias, Blackwell, Boggs, Grant, JJ., and Judge M. Yvette Miller concur. Peterson, J., disqualified.

---

suggests that Williams' first offender status has been revoked.

[6] Though the sentencing order suggests that Williams was sentenced pursuant to both OCGA § 17-10-7 (a) and (c), the sentencing transcript clearly reflects that the trial court imposed a sentence it believed was "mandated" by OCGA § 17-10-7 (c) without consideration of OCGA § 17-10-7 (a). On remand, the trial court may consider sentencing Williams pursuant to OCGA § 17-10-7 (a).

Decided August 28, 2017.

Murder. Cobb Superior Court. Before Judge Kell.

Raina J. Nadler, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, John R. Edwards, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.