302 Ga. 877
FINAL COPY

S17A1519.  MANNER v. THE STATE.

GRANT, Justice.

Appellant Paul Manner was convicted of malice murder and related offenses in connection with the shooting death of Tracey Kingcannon.[1]  On appeal, Manner contends that his trial counsel rendered ineffective assistance by withdrawing a request for a jury charge on the requirement for evidence corroborating accomplice testimony, and by failing to introduce evidence of the confessions of two of the State's witnesses to an earlier aggravated assault

---

[1] The victim was killed on August 23, 2013.  On February 6, 2014, Manner was indicted by a DeKalb County grand jury for malice murder, two counts of felony murder, aggravated assault, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony.  At the conclusion of a trial held May 11 through 18, 2015, the jury found Manner guilty on all six counts. The trial court sentenced Manner to serve life in prison for malice murder, ten years consecutive for criminal damage to property in the first degree, and five years consecutive for possession of a firearm during the commission of a felony; the remaining verdicts merged or were vacated by operation of law.  See *Favors v. State*, 296 Ga. 842, 847-848 (770 SE2d 855) (2015).  On August 3, 2015, Manner filed a motion for new trial, which he amended on November 21, 2016, and on February 1, 2017.  Following a hearing, the trial court denied the motion for new trial on February 22, 2017.  Manner filed a timely notice of appeal on March 6, 2017, and the case was docketed in this Court to the August 2017 term and was orally argued on August 14, 2017.

on the victim. Manner also contends that the trial court's failure to instruct the jury on impeachment by prior conviction related to a first offender guilty plea by State's witness Jermaine Davis was plain error; or, in the alternative, that his trial counsel was ineffective for failing to preserve her objection to the court's denial of her request for that instruction. For the reasons set forth below, we find that counsel's strategic decision to withdraw her request for an accomplice corroboration instruction was not objectively unreasonable under the circumstances of this case. Similarly, counsel's decision to rely on testimony about the State's witnesses' involvement in and confessions to an earlier aggravated assault on the victim, rather than seeking to admit the witnesses' written statements, fell within the broad range of reasonable trial strategy. And we find no error in the trial court's refusal to give the instruction on impeachment by prior conviction, and thus, no deficiency in counsel's failure to make a specific objection on this issue after the jury instructions were given.

Last, Manner contends—and we agree—that the trial court erred in merging the two felony murder verdicts into the malice murder verdict, when the felony murder convictions should have been vacated by operation of law. We affirm.

## I.

Viewed in the light most favorable to the jury's verdicts, the evidence shows the following. Kingcannon lived with his mother in the same neighborhood as Manner and several of the trial witnesses. On August 23, 2013, at about 1:00 a.m., Kingcannon's mother heard gunshots outside her home. When she ran to see what was happening, she saw Kingcannon come out of his bedroom into the hallway. He said he had been shot and asked her to call 911, and then fell to the floor. Kingcannon's mother called 911, and Kingcannon was transported to the hospital, but he could not be saved. He died of a gunshot wound from a 9 millimeter bullet that entered his right arm, penetrated his right lung, and damaged his diaphragm and liver.

Investigating police officers observed bullet holes in the victim's bedroom wall and recovered 17 shell casings from the street outside the victim's home. Sixteen of those shell casings were from 9 millimeter rounds, while one was from a .380 round. Police also found a High-Point 9 millimeter handgun in Kingcannon's bedroom. About two weeks before he was killed, Kingcannon had admitted to a friend that he had stolen a High-Point 9 millimeter firearm from Manner.

Earlier that night, Manner pulled up to the home of two brothers, Brandon and Quintavius Hishida, who lived less than a mile from Kingcannon. Manner was driving an SUV with three passengers. According to Brandon, one of Manner's passengers was a man known to him as "YG," later identified by police as DeMarcus Abrams. Both Brandon and Quintavius saw a firearm in the front area of the SUV; Quintavius identified the firearm as a black 9 millimeter handgun. Manner told the brothers that he was "fixing to go back there and get" Kingcannon because Kingcannon had stolen a pistol from him.

A few hours later, minutes after the shooting, Brandon Hishida called Manner and asked where he was. Manner "said he was on his deck and he said he killed Tracey." When asked if Manner had used those very words, Brandon responded, "Said he killed that ni—a, 'I got the ni—a.'"

The Hishida brothers had their own recent history of violent exchanges with the victim. In May 2013, the Hishida brothers and one of their cousins got into an altercation with Kingcannon. Immediately after the fight, a shot was fired—by whom it was not clear. Kingcannon's friend Darian Ross was present for the altercation and saw Brandon holding a gun. Reginald Vinson, who lived nearby, also witnessed the fight and heard the shot. Sergeant S.J. Rainey from the DeKalb County Police Department responded to the scene of

the altercation, and collected 9 millimeter bullet fragments from the garage wall of Vinson's house. Brandon and Quintavius were later arrested and charged with aggravated assault for their involvement in the altercation. Those charges were still pending against both brothers at the time of Manner's trial.

In early June 2013, the Hishidas reported to police that shots were fired outside their house and that they believed that Kingcannon was responsible. And on the evening Kingcannon was killed, not long before Manner drove by and spoke with the Hishidas, Kingcannon and two others fired guns at the Hishida brothers and their mother, Kyna Hishida, as the Hishidas were standing outside their home.[2] Both Brandon and Quintavius testified at trial and denied shooting into Kingcannon's house on the night he was killed.

At trial, the State's sole eyewitness was Jermaine Davis. Davis testified that, near midnight on the night of the fatal shooting, Manner contacted him and asked if his .380 pistol was still for sale. When Davis confirmed that the gun was still available, Manner asked Davis to come by to sell him the pistol and give him a ride around the corner. Davis drove to Manner's house to pick him up. When Davis arrived, Manner was standing outside with Abrams.

---

[2] No one was hurt in the shooting at the Hishidas'.

Davis gave Manner the .380 pistol and Manner paid him for it, and then they all got into Davis's white Mercury Grand Marquis and Davis drove through the neighborhood.

When Davis passed the victim's house, Manner and Abrams told Davis to stop the car. Manner and Abrams then got out of the car and ran back toward the victim's home. Davis heard gunshots, and when he looked in the rearview mirror, he saw both Manner and Abrams firing toward the victim's house. Manner had the .380 pistol he had purchased from Davis, and Abrams had a larger silver and black handgun. Davis observed Manner hitting the .380 as though it had jammed. After firing at the victim's house, Manner and Abrams returned to Davis's car and got in, telling him to "drive, drive, drive." As he was returning to Davis's car, Manner "cocked" the .380 pistol and a bullet came out, confirming Davis's suspicion that the pistol had jammed. Vinson, who lived two houses away from Kingcannon, heard shots fired and looked out his window. He saw a white car, which he described as a Crown Victoria,[3] drive slowly away from the victim's home.

---

[3] Detective McLendon testified that Vinson's description of a Crown Victoria was consistent with Davis's Grand Marquis, as the two models are similar in appearance.

Manner, Davis, and Abrams returned to Davis's house. Davis testified that he repeatedly asked Manner and Abrams why they had shot into the victim's house, but Manner did not say anything except that it "had to be done." Abrams said that the victim had stolen something, and that they had to "teach him a lesson." Davis told Manner that he did not feel safe around him while Manner had a gun; he asked Manner for the .380 pistol back, and Manner complied.

Cellular telephone records line up with this chain of events. The records show that Manner received calls placing his cell phone in the area of the shooting—also, to be fair, the area of Manner's home—about 15 minutes before the shooting, and again at 1:09 a.m., a few minutes after the 911 call from Kingcannon's mother was dispatched. The 1:09 a.m. call was from Brandon Hishida's cell phone. A call placed from Manner's phone at 1:14 a.m. was routed through a cellular tower located outside Manner and Kingcannon's neighborhood and close to Davis's home; this evidence is consistent with Davis's testimony that he drove Manner and Abrams back to his house after the shooting.

The day after the shooting, Abrams filed a police report stating that his 9 millimeter pistol had been stolen from his vehicle the night before. After

Manner was taken into custody and charged with murder in connection with Kingcannon's death, Abrams visited Manner several times at the jail.[4]

Although Manner does not challenge the sufficiency of the evidence supporting his convictions, it is our practice to review the record and assess the legal sufficiency of the evidence under the standard set out in *Jackson v. Virginia*.[5]  We find that the evidence presented at trial was sufficient for a rational trier of fact to find Manner guilty beyond a reasonable doubt of the crimes for which he was convicted.  See *Jackson*, 443 U. S. at 319.

## II.

Manner contends that his trial counsel was constitutionally ineffective in withdrawing her request for a jury instruction on the requirement for corroboration of accomplice testimony, while permitting without objection the court's instruction that generally, the testimony of a single witness is sufficient to establish a fact; and in failing to introduce evidence that the Hishida brothers confessed to aggravated assault charges stemming from the May 2013 altercation with the victim.  To succeed on his claim that counsel was constitutionally ineffective, Manner must show both that his attorney's

---

[4] Nothing in the record indicates that Abrams had been apprehended as of the time of Manner's trial.

[5] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

performance was deficient, and that he was prejudiced as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. *Strickland*, 466 U. S. at 687-690. And to meet the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 694.

A. *Accomplice Corroboration.* Section 24-14-8 of the Georgia Evidence Code provides that although "[t]he testimony of a single witness is generally sufficient to establish a fact," in felony cases where the only witness is an accomplice, the testimony of the accomplice alone is insufficient. In such cases, evidence corroborating the accomplice's testimony is required to support a guilty verdict. See *Edwards v. State*, 299 Ga. 20, 22 (785 SE2d 869) (2016). The corroborating evidence may be "slight," and may be entirely circumstantial, as long as it is independent of the accomplice's testimony and

either connects the defendant directly with the crime or leads to the inference that he is guilty.  Id.

Here, as Manner now posits, there was evidence that the State's sole eyewitness, Davis, was an accomplice to the murder.  Davis's own testimony established that he provided one of the guns used in the shooting, drove Manner and Abrams to the scene, waited while Manner and Abrams shot into Kingcannon's house, and drove the two away from the scene afterward.  This was sufficient to warrant a jury instruction on the requirement for other evidence to corroborate an accomplice's testimony.  See *Hornbuckle v. State*, 300 Ga. 750, 754 (797 SE2d 113) (2017) ("[T]o authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge.") (citation and punctuation omitted).

Manner's attorney initially requested a jury charge on accomplice corroboration; at the charge conference, however, she withdrew that request. The trial court gave the State's requested pattern instruction that "[t]he testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is no legal requirement of corroboration of a witness, provided you find the evidence to be sufficient."  Under the circumstances of this case— absent counsel's affirmative withdrawal of her request—the trial court should

have also given the accomplice corroboration instruction as an exception to this general rule.[6] See *Stanbury v. State*, 299 Ga. 125, 130-131 (786 SE2d 672) (2016) (trial court's failure to give warranted accomplice corroboration charge was plain error where the jury was instructed that the testimony of a single witness generally is sufficient to establish a fact).

Manner was represented at trial by a seasoned criminal defense attorney, Duana Sanson.  At the time, Sanson had been practicing for more than 20 years and had tried approximately 60 felony cases.  At the hearing on Manner's motion for a new trial, Sanson testified that her theory of defense was that Davis and Abrams were the actual shooters, with the possible involvement of the Hishida brothers, and that Davis and the Hishida brothers were lying about Manner's participation in order to shift blame from themselves.  She withdrew her request for the accomplice corroboration instruction "because it was not something [she] was going to be arguing in [her] closing," and because she was concerned that the language of the instruction suggested that Davis was an

---

[6] The pattern instruction on accomplice corroboration reads in relevant part:
   An exception to this rule is made in the case of (specify felony charge), where the witness is an accomplice.  The testimony of the accomplice alone is not sufficient to warrant a conviction.  The accomplice's testimony must be supported by other evidence of some type, and that evidence must be such as would lead to the inference of the guilt of the accused independent of the testimony of the accomplice.
Suggested Pattern Jury Instructions, Vol. II:  Criminal Cases, § 1.31.92 (2014).

accomplice *to Manner*, thus implying that Manner was involved in the crime. In short, she decided that the accomplice corroboration charge was harmful rather than helpful. She therefore withdrew her request for the instruction, but argued in closing that the jury should not trust Davis's testimony because, as the getaway driver and the owner of the murder weapon, Davis could have been charged with murder as a party to the crime if he had not identified Manner as the shooter and become a witness for the prosecution.

In determining whether counsel's performance was deficient under the *Strickland* standard, we do not judge counsel's actions in hindsight or by the ultimate result of the trial; instead, we consider whether a reasonable attorney could have taken the same action when faced with the same circumstances. See *Freeman v. State*, 295 Ga. 820, 824-825 (764 SE2d 390) (2014). "[O]ur purpose in making this determination is not to grade trial counsel's performance, but simply to ensure that the adversarial process at trial worked adequately. We are therefore highly deferential to the choices made by trial counsel during a trial that are arguably dictated by a reasonable trial strategy." *Head v. Taylor*, 273 Ga. 69, 79 (538 SE2d 416) (2000) (citation and punctuation omitted). In reviewing counsel's performance under the *Strickland* standard, we "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."

*Strickland*, 466 U. S. at 689. A decision made for purposes of trial tactics and strategy may form the basis for an ineffective assistance claim only if it "was so patently unreasonable that no competent attorney would have made it under the circumstances at the time." *Clark v. State*, 300 Ga. 899, 903 (799 SE2d 200) (2017).

In the context of this case, we cannot say that the decision to forgo the accomplice corroboration instruction was an error "so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." *Strickland*, 466 U. S. at 687; see *Huff v. State*, 300 Ga. 807, 813 (796 SE2d 688) (2017) (trial attorney's strategic decision not to request accomplice corroboration charge did not amount to deficient performance). The evidence and circumstances are different than they were in *Fisher v. State*, 299 Ga. 478 (788 SE2d 757) (2016), which Manner argues should control here. In *Fisher*, we noted that, under the circumstances *of that case*, it would have been "entirely unreasonable" for Fisher's counsel to choose not to request a jury charge on accomplice corroboration as a matter of strategy. Id. at 485. But in *Fisher*, only one witness—the one alleged to have been an accomplice— positively connected the defendant to the crime. Although the State presented

circumstantial evidence corroborating its witness's account of the crime, the evidence independent of the accomplice's testimony was weak, and could not have supported Fisher's conviction on its own.[7]  See id. at 485-487.

Here, on the other hand, testimony by the Hishida brothers provided evidence that Manner was seen shortly before the shooting, armed with a 9 millimeter pistol and stating his intention to go "get" the victim.  Brandon Hishida testified that Manner confessed to killing the victim immediately after the crime.  Additional testimony by the Hishida brothers and testimony by the victim's friend Ross provided evidence of motive (the victim stole a gun from Manner), and cellular telephone data placed Manner near the scene of the crime at the time of the shooting.  And here, unlike in *Fisher*, the trial record demonstrates that counsel pursued a strategy of undercutting all of the State witnesses' testimony as self-serving. Under the circumstances, it was not objectively unreasonable for counsel to conclude that any benefit to Manner in instructing the jury that Davis's testimony required corroboration was outweighed by the instruction's potential conflict with the theory of defense.

---

[7] Indeed, a key element of Fisher's ineffective assistance claim was that his trial counsel failed to subpoena a defense witness who could have cast doubt on the testimony of the accomplice, who was the "linchpin" of the State's case.  See *Fisher*, 299 Ga. at 485, 486.

As Manner has not shown that his lawyer's performance was deficient under the first prong of the *Strickland* standard, his ineffective assistance claim on this ground fails. See *Grissom v. State*, 296 Ga. 406, 412-413 (768 SE2d 494) (2015) ("If either prong of the *Strickland* test is not met, then this Court need look no further, and ineffective assistance of counsel is not shown."). Although we need not reach the question of prejudice where the defendant has not made the required showing of deficient performance, we note that the strength of the evidence against Manner apart from Davis's testimony—evidence of Manner's motive, his stated intent to "get" the victim, and that he admitted to the killing—also makes it unlikely that the outcome of the trial would have been different if the accomplice corroboration instruction had been requested and given. See *Strickland*, 466 U. S. at 694 (prejudice prong requires defendant to show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different); *Mosley v. State*, 295 Ga. 123, 125 (757 SE2d 828) (2014) (defendant not prejudiced by counsel's alleged errors where the weight of the evidence of his guilt provided confidence in the basis for the jury's verdict). And as discussed in more detail below, the impact of Davis's testimony was weakened by evidence that he

initially gave several false statements to police, and that his testimony against Manner was part of a negotiated plea bargain.

B. *Evidence of the Hishida Brothers' Confessions.* Next, Manner argues that his trial counsel was ineffective in failing to introduce evidence of the Hishida brothers' confessions to aggravated assault charges arising from the May 2013 altercation with the victim. When asked at trial about the incident, Brandon and Quintavius Hishida each refused to answer questions and, in light of the still-pending charges arising from the incident, asserted the Fifth Amendment right to avoid self-incrimination. Evidence of the altercation was instead provided through the testimony of two witnesses to the fight, Ross and Vinson, and of the responding police officer.

At the motion for new trial hearing, Manner's trial counsel testified that she believed that she had introduced evidence that the Hishida brothers confessed to their involvement in the May 2013 shooting through the testimony of Detective McLendon, who interviewed the Hishida brothers after Kingcannon's death. Counsel explained that she chose to have the fact of the Hishidas' confessions presented to the jury through the detective rather than introduce the written statements themselves because the Hishidas had

"waffled" in their written statements, minimizing the seriousness of the altercation and their own involvement.

Manner contends that, contrary to counsel's recollection, neither Detective McLendon nor any other witness testified that the Hishida brothers had confessed to their involvement in the May 2013 fight and shooting, and that absent such testimony, the failure to introduce the brothers' written statements left the jury with no idea that the Hishidas had confessed to shooting a 9 millimeter handgun in a previous altercation with the victim.

Manner's argument falls short, because there was in fact testimony— albeit somewhat oblique—regarding the brothers' confessions. During defense counsel's cross-examination of Detective McLendon, while discussing the detective's initial interviews with Brandon and Quintavius Hishida, Detective McLendon testified regarding the Hishida brothers' confessions:

> Q: And at the time that you were interviewing Brandon, you already knew about that pending aggravated assault, the shooting case, right?
> A: Yes.
> Q: And you knew that Brandon and Quintavius both had confessed in that case. Do you have those yet or you didn't have that yet?
> A: No, I did not have that yet. I just had the initial police report.
> Q: Okay. So you didn't get the rest of the documentation until later?
> A: Yes.

Detective McLendon's response that he did not have the Hishida brothers' confessions "yet," while not perhaps as direct a statement as counsel may have wished, nonetheless demands the inference that he did have the confessions at a later time. We conclude that counsel's decision to accept this response and forgo the introduction of the Hishidas' written statements fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U. S. at 689. As counsel indicated at the motion for new trial hearing, the Hishida brothers downplayed their conflict with the victim in their written statements. Quintavius's statement indicates that he fired the gun during the incident by "mistake," and that he never had any intention of hurting Kingcannon. Brandon's statement similarly minimizes his involvement in the altercation, suggesting that he and Kingcannon were attempting to resolve their "beef" when the Hishidas' cousin got into a fight with Kingcannon. Given the qualifiers that the brothers included in their written statements, it was not unreasonable for counsel to conclude that those statements may have detracted from the evidence the jury was considering—Detective McLendon's testimony indicating that Brandon and Quintavius eventually confessed to aggravated assault against the victim, along with the witness accounts by Vinson and Ross that the Hishida brothers and the victim were fighting when a shot was fired,

and that Ross saw Brandon holding a gun.[8]  Manner has not overcome the strong presumption that counsel's decision was an exercise of reasonable professional judgment, and so his ineffective assistance claim on this ground fails.

## III.

Manner contends that the trial court erred by refusing to instruct the jury on impeachment by prior conviction in relation to Davis's first offender guilty plea to the felony charge of giving a false statement.  Because Davis had not yet completed his first offender sentence at the time of Manner's trial, Manner argues that the guilty plea qualified as a felony conviction that could be considered by the jury as impeachment evidence.  As discussed below, we find no error in the trial court's ruling that Davis's first offender guilty plea was not a "conviction" for purposes of OCGA § 24-6-609 ("Rule 609"), and so the impeachment instruction was unwarranted.  Counsel is not ineffective for failing to make a meritless objection, so Manner's ineffective assistance claim fails in this regard as well.  See *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d

---

[8] Manner argues that the written statements would have provided evidence that the Hishida brothers had previously fired a 9 millimeter gun, like the one used in the fatal shooting, at the victim.  But a careful review of the Hishidas' statements reveals no mention of the caliber of weapon used in the May 2013 shooting.

280) (2010). Because we find no error, plain or otherwise, in the trial court's refusal to give this instruction, we need not consider Manner's alternative claim that his counsel was ineffective if she failed to preserve her objection.

At trial, Davis admitted in his initial discussions with police that he lied about his involvement in the shooting, first stating that he did not know Manner, and then telling police that Manner and a fictitious person named "Jason" borrowed his car on the night Kingcannon was killed. Davis also admitted that he was arrested for making those false statements, and was in custody on that charge when he finally confessed to his own involvement and named Manner as the shooter. Additionally, Davis testified that he could have received a sentence of five years' imprisonment for the charge of making a false statement, but that he eventually entered a guilty plea as a first offender and received a sentence of probation, with his testimony at Manner's trial being a condition of his sentence.

In light of Davis's guilty plea, Manner's trial counsel requested a jury instruction on impeachment by prior conviction.[9] The trial court declined to

_____

[9] The requested instruction would have informed the jury that, in determining the credibility of witnesses, it was permissible to consider "[p]roof that the witness has been convicted of the [felony] offense of [making a false statement]" and "[p]roof that the witness has been convicted of a crime involving (dishonesty) or (making a false statement)."

give the charge, reasoning that the instruction was unwarranted because Davis's first offender guilty plea was not a "conviction."

Davis was sentenced pursuant to OCGA § 42-8-60 (a), a portion of Georgia's First Offender Act. That section provides that a first-time felony offender who enters a guilty plea may be sentenced to probation or confinement "before an adjudication of guilt" and "without entering a judgment of guilt." Upon satisfactory completion of a sentence imposed pursuant to this section, the defendant is discharged and exonerated of guilt. OCGA § 42-8-60 (e).[10]

We have previously explained that a defendant who is sentenced as a first offender without an adjudication of guilt has not been "convicted" within the meaning of the statute providing for impeachment by prior conviction, and so the first offender's guilty plea is not admissible as general impeachment evidence. See, e.g., *Williams v. State*, 301 Ga. 829, 831 (804 SE2d 398) (2017) (interpreting former OCGA § 24-9-84.1). Manner points out that the statute was changed in 2013, when the new Evidence Code became effective, and argues that the statute now permits the use of a first offender guilty plea as

---

[10] At the time Davis's first offender sentence was imposed, provisions for exoneration and discharge were contained in OCGA § 42-8-62 (2003).

general impeachment evidence at any time until the first offender sentence is complete and the defendant is discharged.

Specifically, Manner points to language in OCGA § 24-6-609 (c), which provides an exception to the general rule for otherwise admissible convictions that have been pardoned or annulled, or for which the defendant has received a certificate of rehabilitation or discharge under any first offender statute. That subsection states, in relevant part, that "[e]vidence of a final adjudication of guilt and subsequent discharge under any first offender statute shall not be used to impeach any witness." OCGA § 24-6-609 (c). Because Davis had just begun his five-year sentence of probation, Manner argues, his "subsequent discharge" had not yet occurred, meaning that the first offender plea was admissible as general impeachment evidence.[11] Manner contends that any other reading of the statute would render the phrase "and subsequent discharge" meaningless. We disagree—the statutory change highlighted by Manner has a different impact than he suggests.

At the outset, we note that under Manner's interpretation, even witnesses who had successfully complied with their sentencing orders and been

---

[11] We note that the jury was instructed on impeachment by bias, and evidence of Davis's first offender guilty plea was introduced for purposes of impeaching his credibility on that ground.

"exonerated of guilt and discharged as a matter of law" under the first offender statute would not be exempt from having their first offender pleas used against them. OCGA § 42-8-60 (c) (1). That is because not a single defendant who successfully completed Georgia's first offender program at the time of the statutory amendment at issue in this case could show an "adjudication of guilt" as required for exemption under OCGA § 24-6-609 (c).

Some statutory background is helpful in understanding why this is so. This Court first held in 1997 that first offender pleas could not be used as general impeachment evidence because successful completion of a first offender sentence means that there has been no adjudication of guilt and thus no criminal "conviction." *Matthews v. State*, 268 Ga. 798, 801-803 (493 SE2d 136) (1997). As noted above, that holding has been reiterated many times. See, e.g., *Williams*, 301 Ga. at 831; *Butler v. State*, 285 Ga. 518, 520 (678 SE2d 92) (2009) ("unless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first offender record") (citation and punctuation omitted); *Smith v. State*, 276 Ga. 263 (577 SE2d 548) (2003) (first offender record inadmissible to impeach witness still serving first offender sentence); *Davis v. State*, 269 Ga. 276, 277 (496 SE2d 699) (1998) (first offender guilty plea is not a "conviction").

The enactment of the new Evidence Code did not change this well-established rule. To begin, the general rule permitting admission of evidence of certain prior convictions as impeachment was carried over from OCGA § 24-9-84.1 into the new Evidence Code with no relevant substantive changes. Compare OCGA § 24-9-84.1 (a) (2006) with OCGA § 24-6-609 (a) (2013). The new rule provides for the admission of evidence that a witness "has been *convicted* of a crime," just as the old one did. Id. (emphasis supplied). Accordingly, we begin with the presumption that the new impeachment statute, like the old one, applies only to "convictions," and that the legislature was aware that this Court has repeatedly held that first offender sentences were not "convictions" admissible as general impeachment evidence under the statute. See *State v. Kachwalla*, 274 Ga. 886, 889 (561 SE2d 403) (2002) (legislature is presumed to know what this Court has held the law to be on a particular subject when it enacts statutes).

The first offender language included in Rule 609 with the adoption of the new Evidence Code does not change the longstanding rule that an adjudication of guilt is required for a conviction—and that a conviction is required to warrant a jury instruction on impeachment by prior conviction. Instead, it provides that, as for a pardoned or annulled conviction, any

conviction subsequently discharged under a first offender statute may not be used as impeachment evidence on general grounds. See OCGA § 24-6-609 (c).

Rule 609 (c) applies to first offender records where there has been *both* "a final adjudication of guilt *and* subsequent discharge under any first offender statute." OCGA § 24-6-609 (c) (emphasis supplied). This new language applies where—unlike here—an adjudication of a witness's guilt has occurred, and the witness thus has a "conviction." The statute provides that in that instance, if the witness subsequently completed and was discharged from a first offender program, that earlier conviction may no longer be used as impeachment evidence. Thus, rather than penalizing first offenders by somehow creating "convictions" where there are none, the statute puts all first offender witnesses on equal footing, including those who were initially convicted but subsequently discharged.[12] We reiterate that, without an adjudication of guilt, there is no conviction, and the statute providing for impeachment by prior conviction simply does not apply.

---

[12] The Evidence Code's amendment notes that it applies to "final adjudication of guilt and subsequent discharge under *any* first offender statute." OCGA § 24-6-609 (c) (emphasis supplied).

Because no adjudication of guilt had been entered in Davis's case, he had not been "convicted" of making a false statement, and his first offender guilty plea was not admissible for purposes of impeachment by prior conviction. Accordingly, the requested jury instruction on impeachment by prior conviction was unwarranted, and the trial court properly declined to give it.

## IV.

Finally, Manner contends that the trial court erred by merging the felony murder verdicts into the malice murder verdict for sentencing, rather than ruling that the felony murder verdicts were vacated by operation of law. The State concedes this point, and we agree. As noted above, Manner was indicted for malice murder, two counts of felony murder, aggravated assault, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony, and the jury returned guilty verdicts on all six counts. Because the verdicts for malice murder and felony murder involved the same victim, the felony murder verdicts are vacated by operation of law. See *Favors v. State*, 296 Ga. 842, 847-848 (770 SE2d 855) (2015).

Nonetheless, although the trial court's nomenclature was incorrect, the error does not affect Manner's sentence. The court properly merged the

aggravated assault into the malice murder verdict, as those two counts of the indictment were both premised on the act of shooting Kingcannon. See *Favors*, supra. The court then sentenced Manner for malice murder and the two remaining counts, and Manner does not raise any allegations of error in those sentences. As there is no sentencing error to correct, we simply note that the felony murder verdicts were vacated by operation of law, rather than "merged" as the trial court stated.

Judgment affirmed. All the Justices concur.

Decided December 11, 2017 --- Reconsideration denied February 5, 2018.

Murder. DeKalb Superior Court. Before Judge Barrie.

Veronica M. O'Grady, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Lenny I. Krick, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.