303 Ga. 420
FINAL COPY

S17A1753.  HOOD v. THE STATE.

NAHMIAS, Justice.

Appellant Tommy Hood was convicted of felony murder and other crimes in connection with the shooting death of Morrell Dorsey and the aggravated assault of Alkeyna Bilal.  Appellant contends that the evidence presented at trial was insufficient to prove him guilty of felony murder; that the trial court committed plain error in failing to give, and his trial counsel provided ineffective assistance in failing to request, certain jury instructions; and that the trial court erred in sentencing him.  We affirm.[1]

---

[1] The victim was killed on September 23, 2013.  On December 17, 2013, a DeKalb County grand jury indicted Appellant for malice murder, four counts of felony murder (based on armed robbery, aggravated assault by shooting Dorsey with a handgun, possession with intent to distribute cocaine, and possession of a firearm by a convicted felon), armed robbery of a cell phone, two counts of aggravated assault with a deadly weapon (against Dorsey and Bilal), possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony.  Appellant's trial began on August 17, 2015, and on August 20, the jury found him not guilty of malice murder, felony murder based on armed robbery and aggravated assault, and armed robbery, but guilty of the remaining charges.  The trial court sentenced Appellant to serve life in prison for felony murder based on possession with intent to distribute cocaine; terms of ten years each for the two aggravated assault charges, running consecutively to the life sentence and concurrently with each other; and a suspended sentence of five years for possession of a firearm during the commission of a felony.  The

1.    (a)    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In September 2013, Appellant, a convicted felon, was renting a motel room in DeKalb County, where he sold cocaine and did tattoos. On September 21 or 22, Kelsey Choates, who was also staying at the motel, saw a chrome revolver with a white grip in Appellant's motel room. Choates offered to buy the gun from Appellant, but Appellant declined.

After midnight on the night of September 22-23, Morrell Dorsey and his girlfriend, Alkeyna Bilal, went to Appellant's motel room to buy crack cocaine. A man whom Appellant called "Slim" answered the door and let them in.[2] Appellant and a woman named Te Te were asleep in one of the beds. Dorsey woke up Appellant and bought a small amount of crack from him, which Dorsey shared with Bilal. Dorsey and Bilal then left.

A few hours later, Dorsey and Bilal returned to Appellant's motel room

court purported to merge the remaining guilty verdicts. Appellant filed a timely motion for new trial, which he amended with new counsel on November 23, 2016. After an evidentiary hearing, the trial court denied the motion on March 16, 2017. Appellant then filed a timely notice of appeal, and the case was docketed in this Court for the August 2017 term and submitted for decision on the briefs.

[2] Appellant also knew Slim by several other nicknames, but Slim was never fully identified or apprehended.

with an unidentified friend who had food stamps to exchange for more cocaine. As before, Slim answered the door. Appellant and Te Te were sleeping again, so Dorsey, Bilal, and their friend sat down and waited for Appellant to wake up. After a while, there was a knock at the door, and Slim went to answer it. When a light was turned on, Dorsey grabbed a small packet of crack off a table and went briefly into the bathroom, where he inserted the packet into his rectum. Appellant woke up and, seeing several people in the room, became concerned about where his drugs were and started looking for them. As Dorsey came out of the bathroom, Appellant got up and started asking Dorsey, Bilal, and their friend where the crack was. Dorsey denied that they took anything. Appellant then pulled a chrome revolver with a white grip out of a nightstand, pointed the gun at them, and threatened to shoot them. Appellant patted down Dorsey and made him pull down his pants, bend over and cough, and squat, but did not find the missing crack. Te Te also searched Bilal unsuccessfully. Appellant said that he was going to shoot Dorsey in the leg whether or not he got the crack back, but Dorsey continued to deny taking the drugs.

Appellant then handed the gun to Slim, and Appellant and Te Te began gathering their things and wiping down the room with bleach. Bilal tried to

3

walk toward the door to leave, but Slim ordered her to stay. When Slim looked away for a moment, Dorsey lunged at him and grabbed for the gun. The two men fell onto a bed with Dorsey on top choking Slim; Appellant may also have been choking Dorsey.[3] During the struggle, Slim fired the gun twice, striking Dorsey both times in the torso. At that point, everyone except Dorsey ran out of the motel room, with Appellant grabbing his flat-screen TV and Xbox game console on the way out. Dorsey then stumbled out of the room and collapsed on the landing, where he died. The police found digital scales and plastic baggies in the motel room, and during Dorsey's autopsy, the packet of crack was found in his rectum.

Three weeks after the shooting, the police arrested Appellant, who admitted that he sold crack cocaine from his motel room and was there when the shooting happened. Appellant denied ever touching the revolver and claimed that he did not realize that Slim had a gun until he heard the gunshots and fled. Appellant also claimed that he had more than $1,000 in cash from a legal settlement hidden in the bathroom that he realized was gone when he awoke

---

[3] At trial, Bilal testified on direct examination that after Dorsey fell on top of Slim, "[Appellant] choked him or whatever"; in her pretrial statement to the police and on cross-examination, Bilal said that Dorsey was on top of Slim, choking him.

4

shortly before the shooting, but he acknowledged that Dorsey did not have the money. While in jail awaiting trial, Appellant told Choates, who was also in jail, that Dorsey had stolen Appellant's crack and deserved to die for it.

(b)    Appellant contends that this evidence was insufficient as a matter of law to support his conviction for felony murder based on possession with intent to distribute cocaine, because his possession of cocaine was interrupted when Dorsey stole the packet of crack and put it in his rectum. We disagree.

The murder statute says that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). This Court has repeatedly explained that the victim's death need not occur at the moment the predicate felony is committed, so long as the felony is the proximate cause of the death. See, e.g., State v. Jackson, 287 Ga. 646, 649 (697 SE2d 757) (2010) ("[W]e have repeatedly held . . . that the phrase 'he causes' in OCGA § 16-5-1 (c) establishes proximate causation as the standard for liability in felony murder cases." (footnote and emphasis omitted)); State v. Cross, 260 Ga. 845, 847 (401 SE2d 510) (1991) ("There is no merit to the defendant's contention that the victim must die during the commission of the underlying felony under a felony-

5

murder indictment."); <u>Jones v. State</u>, 220 Ga. 899, 902 (142 SE2d 801) (1965) ("A murder may be committed in perpetration of a felony, although it does not take place until after the felony itself has been technically completed, if the homicide is committed within the res gestae of the felony." (citation and punctuation omitted)).

Proximate causation exists in this context if the felony the defendant committed "directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or if . . . the homicide (was) committed within the res gestae of the felony . . . and is one of the incidental, probable consequences of the execution of the design to commit the [predicate felony]." <u>Jackson</u>, 287 Ga. at 652 (citations and punctuation omitted). These "proximate cause determinations are generally left to the jury at trial." Id. And the jury in this case was entitled to find beyond a reasonable doubt that Appellant's felonious possession with intent to distribute cocaine proximately caused the fatal shooting of the victim.

To begin with, there is no dispute that the evidence was sufficient for the jury to find Appellant guilty of the predicate felony of possession with intent to distribute cocaine. Appellant admitted to the police that he sold cocaine from

6

his motel room; he had distributed to Dorsey and Bilal some of the crack cocaine that he possessed with that intent a few hours before the shooting; and he was still committing that felony at the time the fatal encounter with Dorsey began. The fatal shooting occurred because Appellant possessed crack cocaine with intent to distribute and wanted to possess again the cocaine that he believed Dorsey had stolen from him, and it is apparent that Dorsey's violent death was a direct and foreseeable consequence of the felony Appellant committed.

This Court and others have recognized that violence is inherent in the business of dealing illegal drugs. See, e.g., Davis v. State, 290 Ga. 757, 760 (725 SE2d 280) (2012) (explaining that drug transactions are foreseeably dangerous); Jackson, 287 Ga. at 652-653 (noting the "dangerous and violent nature" of drug dealing); Brint v. State, 306 Ga. App. 10, 12 (701 SE2d 507) (2010) ("'Firearms are tools of the drug trade.'" (citations omitted)). Appellant certainly understood that deadly violence could result from his drug-dealing, as he kept a revolver close at hand in the room from which he distributed his cocaine and brandished it once he realized that his possession of some of the cocaine may have been interrupted by Dorsey. The fact that Appellant did not immediately shoot Dorsey, but instead held Dorsey and Bilal at gunpoint while

Appellant and Te Te searched them seeking to regain possession of the cocaine (and then had Slim do the same while Appellant and Te Te prepared to leave the crime scene), illustrates rather than undermines the connection between Appellant's drug felony and Dorsey's ultimate shooting death. The evidence shows that Appellant trusted Slim to assist him in his felonious conduct, as he let Slim stay in his motel room, allowed Slim to admit Dorsey and Bilal twice to buy drugs even as he slept, and handed Slim his gun to keep Dorsey and Bilal under control, which Slim did. Nor was it unpredictable that, after being held at gunpoint by both Appellant and Slim, and after Appellant told Dorsey that he would be shot no matter what, Dorsey tried to disarm Slim and was shot to death during the struggle.

Thus, Dorsey's death was closely related temporally and spatially to Appellant's felony of possession with intent to distribute cocaine; it occurred during the res gestae of that felony; and it was a reasonably foreseeable consequence of that inherently dangerous felony. Because the evidence presented at trial, when viewed in the light most favorable to the verdict, was sufficient for a rational jury to find proximate causation and thus to find that Appellant was guilty of felony murder based on possession with intent to

distribute cocaine, we affirm his conviction for that crime. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Davis, 290 Ga. at 760-761. See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). Having reviewed the record, we also conclude that the evidence was legally sufficient for a rational jury to find Appellant guilty beyond a reasonable doubt of the aggravated assault of Dorsey and Bilal and possession of a firearm during the commission of a felony.

(c)    Appellant contends —  and the State agrees —  that the trial court erred in "merging" the guilty verdict for felony murder based on possession of a firearm by a convicted felon into the conviction for felony murder based on possession with intent to distribute cocaine. Under our precedent, the felony murder verdict based on the firearm charge was actually vacated by operation of law. See Leeks v. State, 296 Ga. 515, 523-524 (769 SE2d 296) (2015). But this error in nomenclature does not affect the trial court's judgment, as either way, Appellant was not convicted of or sentenced for the felony murder count based on the firearm charge. See Manner v. State, 302 Ga. 877 (808 SE2d 681)

9

(2017).[4]

(d) The State argues that the trial court erred more significantly in failing to enter a judgment of conviction and sentence on the guilty verdict for possession of a firearm by a convicted felon, which did not merge into any of Appellant's other convictions. That may be correct. See Malcolm v. State, 263 Ga. 369, 373-374 (434 SE2d 479) (1993) (holding that a guilty verdict for possession of a firearm by a convicted felon did not merge into a corresponding felony murder verdict that was vacated by operation of law); Chester v. State, 284 Ga. 162, 162 (664 SE2d 220) (2008) (holding that guilty verdicts for possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony do not merge), overruled on other grounds by Williams v. State, 287 Ga. 192, 193 (695 SE2d 244) (2010). However, the State failed to raise this merger error by cross-appeal (and also did not raise it at the sentencing hearing). As we recently decided, "when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in

---

[4] Because Appellant was not convicted or sentenced on that felony murder count, his contention that the evidence was insufficient to support the jury's guilty verdict on the count is moot. See Young v. State, 290 Ga. 392, 398 (721 SE2d 855) (2012).

10

exceptional circumstances." Dixon v. State, 302 Ga. 691, 698 (808 SE2d 696) (2017). Because there are no exceptional circumstances here, we will not exercise our discretion to correct the trial court's merger of the possession of a firearm by a convicted felon count.

2.    (a)    Appellant asserts that the trial court committed plain error by failing to provide additional jury instructions regarding one of his justification defenses. The court instructed the jury on the use of force in defense of property, essentially tracking the statutory language of OCGA § 16-3-24,[5] and it also charged the jury on justification generally, the use of force in self-defense, and the use of force in defense of habitation. Nevertheless, Appellant argues that the jury should have been specifically instructed that it could find that Dorsey's "attack" on Slim was an aggravated assault, which is a forcible

_____

[5] OCGA § 16-3-24 says in full:
      (a) A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with real property other than a habitation or personal property:
            (1) Lawfully in his possession;
            (2) Lawfully in the possession of a member of his immediate family; or
            (3) Belonging to a person whose property he has a legal duty to protect.
      (b) The use of force which is intended or likely to cause death or great bodily harm to prevent trespass on or other tortious or criminal interference with real property other than a habitation or personal property is not justified unless the person using such force reasonably believes that it is necessary to prevent the commission of a forcible felony.

11

felony that could justify the use of deadly force against Dorsey, and that the court should have instructed the jury on the statutory definition of "forcible felony." See OCGA § 16-1-3 (6) (defining a "forcible felony" to mean "any felony which involves the use or threat of physical force or violence against any person").

Appellant acknowledges that his trial counsel did not object to the jury instructions on justification following the jury's charge and thus that this Court's review of these claims is for plain error only. See OCGA § 17-8-58 (b); State v. Kelly, 290 Ga. 29, 32 (718 SE2d 232) (2011). To show plain error, Appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Woodard v. State, 296 Ga. 803, 806 (771 SE2d 362) (2015). "Satisfying all four prongs of this standard is difficult, as it should be." Kelly, 290 Ga. at 32-33 (citation and punctuation omitted).

Even if we assume (dubiously) that a jury instruction on defense of property was supported by the evidence in this case, the errors Appellant now asserts were neither obvious nor likely to have affected the outcome at trial.

12

Although the trial court did not explicitly instruct the jury that it could find that Dorsey committed an aggravated assault or that aggravated assault is a forcible felony, it did charge the jury that Appellant's use of deadly force in defense of property would be justified if reasonably believed to be necessary to prevent the commission of a forcible felony. The court also instructed the jury on the definition of aggravated assault in terms that would encompass Dorsey's alleged assault and that made it clear that the crime is a felony involving force. In connection with the count of felony murder based on aggravated assault and the two counts of aggravated assault against Appellant, the court instructed the jury that aggravated assault is a felony; that "a person commits the offense of aggravated assault when that person assaults another person with any object, device, or instrument that, when used offensively against a person, is likely to or actually does result in serious bodily injury"; and that "a person commits the offense of aggravated assault when that person assaults another person with a deadly weapon."

The jury therefore had sufficient direction "[i]n order to intelligently consider" Appellant's defense-of-personal-property theory of justification based on his far-fetched claim that Dorsey committed aggravated assault when he

13

lunged at Slim to attempt to wrestle away the gun that Slim (and Appellant) had been using to threaten Dorsey and Bilal. Wiseman v. State, 249 Ga. 559, 560 (292 SE2d 670) (1982). And in light of the jury instructions as a whole, Appellant has not shown that, but for the trial court's failure to give the additional instructions that he now claims should have been given, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Kelly, 290 Ga. at 34; Pippen v. State, 299 Ga. 710, 714 (791 SE2d 795) (2016) (finding no plain error after reading the jury charge as a whole, noting that the trial court "is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding." (citation and punctuation omitted)); Holmes v. State, 273 Ga. 644, 647 (543 SE2d 688) (2001) (explaining that where the trial court's charge fairly informed the jury when a homicide is justifiable and the defendant did not request a charge on the specific forcible felony, there is no harmful error). Accordingly, Appellant has not shown plain error.

(b) In the alternative, Appellant contends that his trial counsel provided ineffective assistance by failing to preserve these claims of instructional error for ordinary appellate review. To prevail on a claim of ineffective assistance of

14

counsel, Appellant must show that his counsel's performance was professionally deficient and that the deficiency so prejudiced Appellant that there is a reasonable likelihood that, but for counsel's error, the outcome of the trial would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); Smith v. State, 301 Ga. 348, 352 (801 SE2d 18) (2017). "If an appellant fails to meet either prong of the Strickland test, it is not incumbent upon this Court to examine the other prong." Green v. State, 291 Ga. 579, 580 (731 SE2d 359) (2012).

We need not decide whether trial counsel's failure to preserve Appellant's claims of instructional error amounted to deficient performance, because Appellant has not shown Strickland prejudice. As just explained, the trial court's charge adequately instructed the jury as to when homicide is justifiable to defend against interference with personal property. In light of the charge as a whole, Appellant has not shown a reasonable probability that his trial would have ended more favorably for him had his counsel preserved his claims of instructional error. See Mohamud v. State, 297 Ga. 532, 535 (773 SE2d 755) (2015) (holding that trial counsel's failure to request a jury instruction on the definition of aggravated assault did not prejudice the defendant when the charge

as a whole fairly instructed the jury on self-defense).  See also Martin v. State, 298 Ga. 259, 278 (779 SE2d 342) (2015) (equating the third, harm prong of the plain error standard with the "test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions").  Accordingly, Appellant's ineffective assistance claim also fails.

3.    Finally, we consider Appellant's contention that the trial court erred in failing to instruct the jury on involuntary manslaughter based on reckless conduct as a lesser included offense of the murder charges.  Again, Appellant did not raise this claim of instructional error at trial, so we review it only for plain error.  See OCGA § 17-8-58 (b); Kelly, 290 Ga. at 32.

Reckless conduct is a misdemeanor, see OCGA § 16-5-60 (b), and "[a] person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. . . ."  OCGA § 16-5-3 (a).  Appellant contends that his acts of possessing cocaine with the intent to distribute it, attempting to get drugs and money back from addicts, and handing the gun to Slim somehow combined to constitute evidence

16

of merely reckless conduct.  But Appellant cannot turn multiple felonies into a misdemeanor.  All of those acts — Appellant's possession of cocaine with intent to distribute, his aggravated assault of Dorsey and Bilal as part of his effort to regain the drugs, and his possession of the gun as a convicted felon —  were themselves felonies, and to support a jury charge on involuntary manslaughter, the unlawful act underlying the unintentional death of the victim must be an act other than a felony.  See Turner v. State, 281 Ga. 487, 489 (640 SE2d 25) (2007).  Accordingly, Appellant has not shown that the trial court erred, much less obviously erred, in failing to charge the jury on his convoluted theory of involuntary manslaughter based on reckless conduct. Likewise, Appellant's trial counsel did not provide ineffective assistance by not requesting this meritless charge.  See Manner, 302 Ga. at 887.

Judgment affirmed.  All the Justices concur.

Decided March 5, 2018 — Reconsideration denied March 29, 2018.

Murder. DeKalb Superior Court. Before Judge Johnson.

Veronica M. O'Grady, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.