## S16A1126. PIPPEN v. THE STATE.
(791 SE2d 795)

HUNSTEIN, Justice.

Appellant Paulette Pippen was convicted of felony murder and cruelty to a person 65 years of age or older in connection with the November 2010 death of Joseph Vernon Ray.[1] Pippen appeals, alleging that the evidence was insufficient to sustain her conviction, that the trial court gave erroneous jury instructions, and that she received ineffective assistance of counsel. Finding no error, we affirm.

1. Pippen contends that the evidence presented at trial was insufficient to sustain her conviction. We disagree. Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. At all relevant times, 75-year-old victim Joseph Vernon Ray resided at Jackson Personal Care Home in Greene County, Georgia, which was owned by co-defendants Vernon and Emma Jackson. The victim was nonverbal and required personal care due to his physical limitations and severe mental deficits. Appellant Paulette Pippen, a licensed Certified Nursing Assistant ("CNA"), was responsible for the victim's daily care; this included bathing, dressing, grooming and feeding him, as well as cleaning his room and administering his medications.

---

[1] On August 23, 2011, a Greene County grand jury indicted Paulette Pippen, along with co-defendants Vernon Jackson, Emma Jackson, and Rodney Gresham, for felony murder predicated on cruelty to a person 65 years of age or older and cruelty to a person 65 years of age or older. On October 11, 2012, following a three-day jury trial, Pippen was convicted of both counts. She was sentenced to life in prison for felony murder; the trial court merged the cruelty count with the felony murder count for sentencing purposes. Pippen timely filed a motion for new trial on October 29, 2012, which was subsequently amended on August 5, 2015. The trial court held a hearing on Pippen's motion for new trial on September 28, 2015, and denied the motion in an order filed on October 5, 2015. Pippen timely filed a notice of appeal, which was docketed to the April 2016 term of this Court, and this case was thereafter submitted for decision on the briefs.

On or about November 9, 2010, the victim received first degree burns due to bathing in scalding hot water. After this incident, co-defendant Vernon Jackson told Pippen not to call 911 because he did not want to lose his business license. Pippen followed his direction. The next day, Ray was taken to his primary care doctor by Vernon Jackson for a previously scheduled check-up. During the visit, the doctor discovered a small section of first/second degree burns on Ray's leg; the doctor prescribed an antibiotic and burn cream to treat the injury. The rest of Ray's injuries were not reported to the doctor during that visit, nor were they ever reported to Ray's next of kin.

On December 22, 2010, Ray was admitted to Athens Regional Medical Center for treatment of what the doctors believed at the time to be extensive third degree burns to the lower half of his body. Witnesses recalled that the victim was very frail and small. He had large patches of black skin and was emitting an odor akin to the smell of rotting flesh. The doctors determined that the victim was malnourished, dehydrated, anemic, possibly in renal failure, and at risk for sepsis.

The victim was subsequently transferred to the Burn Center at Doctors Hospital in Augusta, Georgia. Ray arrived at the Burn Center in a contracted fetal position; his muscles were so tight that doctors could not move his extremities. Ray's treating physician opined at trial that, based on the severity of the constriction of the muscles and the presence of large bilateral blood clots in Ray's legs, the victim had not used his extremities for two to four weeks. The doctor concluded that the victim suffered from multiple stage-four bedsores throughout the lower half of his body. The bedsores were so severe, and had become so infected, that the doctors could see the victim's bones and tendons through the open sores. Indeed, because the victim's health condition was so poor, the hospital contacted protective services. Ray later died at the Burn Center from sepsis and organ failure related to infections stemming from his multiple bedsores.

Pippen admitted at trial that, prior to being taken to the hospital, the victim was not eating well and began to smell and that portions of his skin had turned black. Further, despite being a licensed CNA, she claimed that she had never received any training on identifying or treating burns or bedsores. She admitted that, while she reported all of these issues to Vernon Jackson "several times," she did not tell the victim's family or call 911, as it was the personal care home's policy to notify Vernon Jackson of any issues and then follow his instructions.

Based on the foregoing, the record shows that there was sufficient evidence to enable a rational trier of fact to conclude beyond a

reasonable doubt that Pippen was guilty of the crime for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. After the close of evidence, the trial court instructed the jury on many aspects of Georgia law. Specifically, the trial court began its jury charge by reading verbatim the counts in Pippen's indictment. The court then charged the jury on: the State's burden of proof; Pippen's presumption of innocence; direct and circumstantial evidence; parties to a crime; intent; mere presence; mere association; grave suspicion; misfortune or accident; criminal negligence; misapprehension of fact; felony murder; and cruelty to a person 65 years of age or older. Pippen's trial counsel did not object to the court's charge.

Now, on appeal, Pippen alleges that the trial court erred during its charge by: (1) instructing the jury that Pippen could be found guilty if she had "immediate charge or custody" of Ray despite being charged as a party to the crime; (2) instructing the jury that Pippen could be convicted for willfully depriving Ray of "necessary sustenance" when she was not indicted for that act; (3) failing to define "willfully deprives" to the jury and failing to charge the jury that acting "under a physician's direction" is a defense to the elder cruelty statute. Because counsel did not object to any of these charges, we review for plain error, "meaning that we will reverse the trial court only 'if the instructional error was not affirmatively waived . . . , was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " (Citation and punctuation omitted.) *Brown v. State*, 297 Ga. 685, 691 (4) (777 SE2d 466) (2015). "In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case." (Citations and punctuation omitted.) *Allaben v. State*, 299 Ga. 253, 259 (3) (d) (787 SE2d 711) (2016).

(a) *"Immediate charge or custody" instruction*

Pippen first alleges that the trial court erred by instructing the jury that she could be found guilty if she had "immediate charge or custody" of the victim, because she was charged as a party to the crime. As discussed above, in addition to reading Pippen's indictment to the jury, the trial court charged the jury on parties to a crime, intent, mere presence, mere association, grave suspicion, and cruelty to a person 65 years of age or older. Reading the jury charge as a whole, Pippen's claim that the trial court erred in instructing the jury that she could be found guilty if she had "immediate charge or custody" of Ray fails because she has not demonstrated that the alleged error was obvious beyond reasonable dispute, let alone that it likely affected the outcome of the proceedings. The trial court's

instruction concerning the State's burden of proof regarding whether Pippen had "immediate charge or custody" of Ray was properly tailored to the indictment and was part of a pattern charge that correctly tracked Georgia law. Accordingly, we see no error.

(b) *Willfully depriving "necessary sustenance" instruction*

Pippen also failed to establish plain error concerning her claim that the trial court erred by instructing the jury that she could be convicted for willfully depriving "necessary sustenance" from the victim when Pippen was not indicted for that act. After reading Pippen's indictment to the jury, the trial court charged the jury regarding cruelty to a person 65 years of age or older as follows:

> A guardian or other person supervising the welfare of or having immediate charge or custody of a person who is sixty-five years of age or older commits the offense of cruelty to a person who is sixty-five years of age or older when that person willfully deprives a person who is sixty-five years of age or older of healthcare, shelter, or necessary sustenance, to the extent that the health or well-being of a person who is sixty-five years of age or older is jeopardized.

> The Georgia legislature enacted this statute to protect susceptible elderly persons from abusive and physical exploitation. The statute, it [sic] holds responsible a person having supervision or immediate charge or custody of an elderly person who willfully fails to provide necessary healthcare and sustenance to that person under their care.

After this instruction, the trial court again charged the jury that, in order to convict Pippen of cruelty to a person 65 years of age or older, they must find that Pippen committed the offense as alleged in the indictment.

We have held that "[t]he giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment." *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999). Here, although the trial court charged the jury that a person commits the offense of cruelty to a person 65 years of age or older by willfully depriving that person "of healthcare, shelter, or necessary sustenance," the trial court clearly limited the jury's consideration of guilt beyond a reasonable doubt to the manner specified in the indictment. Indeed, the trial court read the indictment to the jury during the court's charge and instructed the jury that they could only find Pippen guilty of cruelty to a person

65 years of age or older if they found beyond a reasonable doubt she had committed the offense as alleged in the indictment. See *Martin v. State*, 268 Ga. 682 (8) (492 SE2d 225) (1997) (no trial court error where trial court's charge on both methods of aggravated assault was subsequently limited to the consideration of the specific method of committing the offense as alleged in indictment). Therefore, reading the charge as a whole, Pippen has failed to establish that the trial court's instruction likely affected the outcome of the proceedings.

(c) *"Willfully deprives" and "acting under a physician's direction" instructions*

Finally, Pippen argues that the trial court erred by failing to, sua sponte, further define "willfully deprives" within the elder cruelty statute for the jury and by failing to instruct the jury that "acting under a physician's direction" is an exception to the elder cruelty statute. We disagree.

Pippen has failed to meet the plain error standard regarding her allegation that the trial court should have further defined the phrase "willfully deprives" as stated in the elder cruelty statute. Reading the charge as a whole, the trial court properly instructed the jury on cruelty to a person 65 years of age or older and further instructed the jury on intent and parties to a crime using pattern instructions and tracking language of Georgia case law. Moreover, the " 'trial court is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding.' " (Citations and punctuation omitted.) *Allaben v. State*, 299 Ga. at 253, 260 (3) (e) (addressing the trial court's failure to define the word "likely"). See also *Williams v. State*, 298 Ga. 208, 214 (4) (779 SE2d 304) (2015) (trial court did not commit plain error in not defining the terms "deliver," "delivery," or "distribute," as they are all commonly understood words); *McKibbins v. State*, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013) (holding that "accomplice" does not need further definition as it is a commonly used and understood word); *Smith v. State*, 249 Ga. 228, 229 (2) (290 SE2d 43) (1982) ("mitigation" is a "word of common meaning," which does not require further definition). Thus, Pippen has failed to show that not further defining "willfully deprives" was an obvious error or likely affected the outcome of the proceedings.

Pippen was also not entitled to an instruction that "acting under a physician's direction" was a defense to her criminal charges. Though only "slight evidence" is required to support a jury charge, see *Hicks v. State*, 287 Ga. 260, 262 (2) (695 SE2d 195) (2010), here there was only evidence that Pippen was acting under the direction of the personal care home owner, Vernon Jackson, who is not a doctor. Accordingly, Pippen has not established that the failure of the trial

court to charge the jury on these issues likely affected the outcome of the proceedings as the claim is entirely without merit.

3. Finally, Pippen contends that she received ineffective assistance of trial counsel. Specifically, she alleges that trial counsel should have: requested a jury instruction that she could be acquitted if the jury found she was acting under a physician's direction; requested that the court further instruct the jury on the meaning of "willfully deprived"; and objected to the court's alleged improper jury instructions as discussed in Division 2, supra. We disagree.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579 (2) (731 SE2d 359) (2012). "In reviewing the trial court's decision, '(w)e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.'" (Citations and punctuation omitted). *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

We agree with the trial court that Pippen failed to demonstrate that her trial counsel was constitutionally ineffective. Moving directly to the second prong of the *Strickland* analysis, Pippen's ineffectiveness claims fail for the reasons discussed in Division 2, supra, as she is unable to establish a reasonable probability that the outcome of her trial would have been different had counsel requested a jury instruction on the "acting under a physician's direction" exception or the meaning of "willfully deprived," or had counsel objected to the court's alleged improper jury instructions. Accordingly, Pippen's ineffectiveness claims are without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*Kevin A. Anderson*, for appellant.

*Fredric D. Bright, District Attorney, Allison T. Mauldin, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.