311 Ga. 719
FINAL COPY

S21A0424. WALKER v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant O'Shaye Walker was convicted of felony murder, armed robbery, attempt to purchase marijuana, and a firearm offense in connection with the shooting death of Taquahn Jackson. In this appeal, he argues that the trial court erred by failing to instruct the jury on misdemeanor possession of marijuana as a lesser-included offense and by giving an overbroad instruction on the attempt to purchase marijuana charge. He also contends that his trial counsel provided ineffective assistance by failing to object to the admission of certain statements made by Appellant and a detective during Appellant's recorded interview. We affirm.[1]

---

[1] The crimes occurred on November 12, 2014. In March 2015, a Fulton County grand jury indicted Appellant for malice murder, three counts of felony murder, armed robbery, aggravated assault, criminal attempt to purchase marijuana, and possession of a firearm during the commission of a felony. Appellant was tried from May 3 to 5, 2016, and the jury found him not guilty of malice murder but guilty of the other charges. The trial court sentenced

1. The evidence presented at trial showed the following. Shortly before 1:00 p.m. on November 12, 2014, Melissa Douse heard a loud bang and gunshots outside her apartment in Union City. She ran outside and saw that a Chevrolet Monte Carlo — Jackson's mother's car, which he was using that day — had crashed into her car. Douse saw two men inside the Monte Carlo; the driver (who was later identified as Jackson) looked unconscious, and the passenger (who was later identified as Appellant) appeared to be wounded. She went inside to call 911; when she returned, she saw a third man helping Appellant out of the car. When the third man saw Douse, he dropped Appellant and ran into the woods down a path that connected the apartment complex with another complex where Appellant's mother lived. The third man was never identified. When

_____

Appellant to serve life in prison for felony murder based on aggravated assault, 20 consecutive years for armed robbery with ten years probated, five concurrent years for attempt to purchase marijuana, and five consecutive years probated for the firearm offense. The remaining counts were vacated or merged. Appellant filed a timely motion for new trial, which he later amended with new counsel. After an evidentiary hearing, the trial court denied the motion in June 2019. Appellant filed a timely notice of appeal, which he later amended. The case was docketed to the term of this Court beginning in December 2020 and submitted for a decision on the briefs.

2

Douse approached Appellant, he told her that "the guy that was unconscious on the driver side tried to rob him and shot him and not to tell the officers about the guy that ran off in the woods."

Law enforcement and emergency medical personnel then arrived on the scene. Jackson, who had been shot five times, was pronounced dead.[2] He was wearing a Versace belt and Giuseppe Zanotti shoes and had $110 in his back pocket.[3] A 9mm pistol was found between Jackson's feet in the Monte Carlo, along with two 9mm cartridge cases that had been fired from that pistol. Five .40-caliber shell casings that could not have been fired from the 9mm pistol were also found inside the car. There was a bag of marijuana and a scale in the back seat. Appellant was found lying on the ground about 30 feet from the car, near another bag of marijuana and a .40-caliber cartridge; he had a gunshot wound to his stomach.

---

[2] The medical examiner who conducted Jackson's autopsy testified that although Jackson would have died within minutes, he "would . . . have still been maybe . . . mobile and able to grab for something" like a gun after he was shot.

[3] Jackson was an aspiring rap artist who had recently signed a record deal and made money performing shows.

Both bags of marijuana weighed slightly less than an ounce.

Appellant told police officers at the scene, including lead Detective Gloria Hodgson, that he was buying marijuana from Jackson when Jackson robbed and shot him, and he shot Jackson in response. When asked where his gun was, Appellant claimed that he had thrown it into the bushes nearby, but the gun was never found. Appellant was taken to the hospital for surgery. Before he was moved into the operating room, he told an investigator, "I shot him, but I don't know if he dead," or "I don't know if he dead, but I shot him"; after a pause, Appellant added, "and I got the weed from him."

Text messages and call records from Appellant's cell phone showed that at 11:43 a.m., he had sent Jackson a text saying, "I need an oz for 275." Jackson asked for an address, and Appellant texted him the address of the apartment complex in Union City. After several more texts clarifying the address and four phone calls, the last communication between the two phones was a call from Jackson's phone to Appellant's phone at 12:54 p.m. Douse called 911

4

to report the shooting at 1:00 p.m. Other text messages showed that several weeks before the shooting, Appellant offered to sell Jackson a .40-caliber pistol.

After Appellant was released from the hospital, Detective Hodgson and Detective Cliff McClure interviewed him at his mother's apartment; the interview was audio-recorded, and parts of it were later played for the jury. Appellant told the detectives that he met Jackson in October 2014, when Jackson approached him outside a gas station and offered to sell him marijuana; Appellant bought $10 worth, and they exchanged phone numbers. They later exchanged text messages, but they did not meet again in person until the day of the shooting.

Appellant claimed that before Jackson arrived at the apartment complex, Jackson "kept asking me was I by myself." Appellant said that once Jackson arrived:

> I got in the car with him. We shook hands and he had the weed right there on his lap and he was like, do you have the money. I like, yeah. I like, do you have a scale? And he was like, yeah. So, he was like, he gave me the weed and it looked off. So, I like, I need a scale. Like, just show

5

me the money so I know you got it. So, I pulled out the money and then next thing you know he, I'm thinking he pulling out a scale, but he pulls out the gun and then that's when I tried to reach for the gun. Then that's when he shot me. And that's all, that's all I can remember.

Later in the interview, Appellant said that while they were in the Monte Carlo, he paid Jackson $275 for the marijuana, but he could not tell the detectives in which pocket Jackson put the money (and the only money found at the crime scene was the $110 in Jackson's back pocket). Appellant first denied having a gun at the scene, but he later admitted that he had a gun and claimed that he did not know where it ended up after he threw it into the bushes. Appellant also repeatedly claimed that he did not know who the third man was that Douse saw dragging Appellant away from the Monte Carlo.

2. At trial, Appellant requested a jury charge on misdemeanor possession of an ounce or less of marijuana as a lesser-included offense of attempt to purchase marijuana.[4] The trial court denied

_____

[4] OCGA § 16-13-30 (j) generally makes it a felony for "any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute

6

the request, and Appellant objected to the omission of the instruction after the court charged the jury. We see no error.

"'[T]o authorize a jury instruction on a lesser included offense, there must be some evidence in the record that the defendant committed that offense.'" *Stepp-McCommons v. State*, 309 Ga. 400, 403 (845 SE2d 643) (2020) (citation omitted). Where the evidence shows either the commission of the greater offense as charged or the commission of no crime at all, an instruction on a lesser-included offense is not required. See id. "'Whether the evidence was sufficient to warrant the requested instruction is a legal question, which we review de novo.'" Id. (citation omitted).

Appellant argues that based on the evidence that the police found him at the scene near a bag containing less than an ounce of marijuana, the jury could have concluded that his purchase of the marijuana had been completed by the time of the shooting and, at

marijuana." OCGA § 16-13-2 (b) says that "[n]otwithstanding any law to the contrary, any person who is charged with possession of marijuana, which possession is of one ounce or less, shall be guilty of a misdemeanor[.]"

7

that point, he was merely in possession of marijuana.[5] Under this theory, however, Appellant possessed the marijuana only because he had completed the commission of the greater offense of attempting to purchase it. See OCGA § 16-4-2 ("A person may be convicted of the offense of criminal attempt if the crime attempted was actually committed in pursuance of the attempt . . . ."). Indeed, the evidence indicated that Appellant possessed the marijuana because he either purchased it from Jackson or he robbed Jackson after meeting him to purchase it. There was no evidence that Appellant possessed the marijuana when he arrived at the meeting or that he obtained possession without completing the commission of a charged greater offense. Thus, the trial court did not err by declining to instruct the jury on possession of marijuana as a lesser-included offense.[6]

---

[5] At trial, Appellant's counsel presented this theory that Appellant had already completed the purchase as part of an argument that Appellant was not committing a felony when he shot Jackson to defend himself. See OCGA § 16-3-21 (b) (2) ("A person is not justified in using force [for self-defense] if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony[.]"). The jury was instructed on self-defense.

[6] At trial and on appeal, Appellant has relied on *Johnson v. State*, 296 Ga. App. 697 (675 SE2d 588) (2009), for the proposition that possession of a

3. Appellant argues next that the trial court's charge to the jury on the attempt to purchase marijuana count exceeded the scope of the indictment. In its final jury charge, the trial court read the indictment to the jurors, including the following:

> Count seven charges [Appellant] with criminal attempt to purchase marijuana. On the 12th day of November, 2014, with intent to purchase marijuana did perform an act which constitutes a substantial step toward the commission of said crime, to wit: meeting with Taquahn Malik Jackson at 5300 State Route 138 in Union City, Georgia to purchase marijuana from Taquahn Malik Jackson.

The court later instructed:

---

controlled substance is always a lesser-included offense of the purchase of the same controlled substance. See id. at 699 ("We see no logical distinction between the purchase of a controlled substance and the sale of a controlled substance for purposes of charging possession as a lesser included offense."). The Court of Appeals's statement in *Johnson* that there is no "logical distinction" between sale and purchase in this context is overbroad at best. We need not decide whether *Johnson* was correctly decided, however, because its unusual facts are distinguished from the facts of this case. In *Johnson*, the defendant sheriff's deputy testified that she did not intend to purchase or pay for the marijuana she was found with; she claimed that she was given a change purse containing a small amount of marijuana, and when told that the purse contained drugs, she placed it in the evidence crate of her patrol car and drove straight to the sheriff's house to report the incident, only to be stopped and arrested en route. See id. at 697-698. In this case, by contrast, there was no evidence to support a finding that Appellant possessed the marijuana except intentionally as a result of a charged greater offense. We also need not decide today whether there are any circumstances in which possession of marijuana could be a lesser-included offense of attempt to purchase the same marijuana.

9

A person commits the offense of criminal attempt to purchase marijuana when that person, with intent to commit the purchase of marijuana, performs any act that constitutes a substantial step toward the commission of the crime of the purchase of marijuana. *Under the laws of Georgia, it is unlawful for any person to possess, have under his control, purchase, sell or possess with intent to distribute marijuana.*

(Emphasis supplied.) When instructing the jury on the related felony-murder count and on the firearm-possession count, the court again referred to the marijuana count as "criminal attempt to purchase marijuana." And when discussing the verdict form, the court explained:

If, after considering the testimony and evidence presented to you, together with the charge of the court, you should find and believe beyond a reasonable doubt that the defendant in Fulton County, Georgia, on the dates in the indictment, did commit the offense or offenses charged, as alleged in the indictment, you would be authorized to find the defendant guilty.

Appellant did not object to these instructions at trial, but he now argues that the italicized language was improper based on the principle that "'a jury instruction [that] deviates from the indictment violates due process where there is evidence to support a conviction

10

on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.'" *Pippen v. State*, 299 Ga. 710, 713 (791 SE2d 795) (2016) (citation omitted).

Because Appellant did not raise this claim at trial, we review it only for plain error, meaning that he must show that "the alleged instructional error was not affirmatively waived; was clear and obvious, rather than subject to reasonable dispute; likely affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Knighton v. State*, 310 Ga. 586, 591 (853 SE2d 89) (2020). "An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." Id. (citations and punctuation omitted). Appellant's claim was not affirmatively waived, and we can assume without deciding that the trial court clearly erred in its one mention of unlawful acts involving marijuana with which Appellant was not charged, because his claim fails on the third part of the plain error test.

11

"[W]hen we are presented with a claim that a particular instruction is misleading, '(w)e do not evaluate jury charges in isolation, but rather consider them as a whole to determine whether there is a reasonable likelihood the jury improperly applied a challenged instruction.'" *Carpenter v. State*, 305 Ga. 725, 728 (827 SE2d 250) (2019) (citation omitted). In this case, the jury instructions as a whole — which included reading the indictment, instructing the jury to decide if Appellant was guilty of the offenses charged "as alleged in the indictment," and referring to the charged marijuana offense no less than eight times in terms of a "purchase" of marijuana — left no doubt that the jury could find Appellant guilty only if the State proved that he had attempted to *purchase* marijuana as charged. Thus, the alleged error did not likely affect the outcome of Appellant's trial, and he has failed to demonstrate plain error. See, e.g., *Pippen*, 299 Ga. at 713-714 (holding that the appellant failed to establish that the trial court's mention of an act not charged in the indictment likely affected the outcome of the proceedings because the court read the indictment to the jury and

12

instructed the jurors that they could find the defendant guilty of the charged crime only if they found that she committed the offense as alleged in the indictment).

4. Finally, Appellant argues that his trial counsel provided ineffective assistance by failing to object to certain statements made by Appellant and Detective McClure during Appellant's interview. We disagree.

At trial, after the State indicated its intention to introduce into evidence Appellant's audio-recorded interview with the detectives at his mother's house, Appellant's counsel moved to redact the last part of the interview, starting at page 18 of the interview transcript through the end of the transcript on page 24. This part included statements made by Appellant and Detective McClure about Appellant's job status, disability checks, father, and "thug life." Appellant's counsel argued that the statements were irrelevant, improper and prejudicial character evidence, and hearsay, and that the officers were "editorializing." In response, the trial court directed the redaction of some of the objected-to statements, instructing the

13

prosecutor to mute the recording and to redact the portion of the interview transcript from page 19, line 2 through page 20, line 1 that included the statements about Appellant's disability and "thug life." When the prosecutor tendered the redacted interview into evidence, Appellant's counsel objected again, asserting that the redaction should have continued past page 20 to the end of the interview.[7]

Appellant now argues, as he did in his motion for new trial, that his trial counsel provided ineffective assistance by failing to object to seven statements made during the interview on the grounds that they were irrelevant, prejudicial, and bad character evidence.[8] See OCGA §§ 24-4-401, 24-4-403, 24-4-404 (a). To prove ineffective assistance of counsel, Appellant must show that his

---

[7] The interview transcript was given to the jury for reference while the recording was played and it was entered into the record, but it was not sent back with the jury during deliberations.

[8] In one sentence in his brief, Appellant also asserts that these statements were hearsay and improper comments on the evidence. To the extent Appellant is actually arguing that his trial counsel should have made certain hearsay and improper-comment objections, those arguments were not preserved for review on appeal because he did not make them in his amended motion for new trial filed by his appellate counsel. See *Cross v. State*, 309 Ga. 705, 710 n.6 (848 SE2d 455) (2020) ("[W]here a claim of ineffective assistance of trial counsel was not raised at the earliest practicable moment, it is not preserved for appellate review.").

counsel's performance was deficient and that the deficient performance resulted in prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

> To show deficient performance, Appellant must prove that his lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. In particular, decisions regarding trial tactics and strategy constitute deficient performance only if they were so patently unreasonable that no competent attorney would have followed such a course. To establish prejudice, Appellant must prove that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.

*Carter v. State*, 310 Ga. 559, 562 (852 SE2d 542) (2020) (citation and punctuation omitted). "We need not address both parts of the inquiry if Appellant makes an insufficient showing on one." *Barboza v. State*, 309 Ga. 319, 326 (845 SE2d 673) (2020).

(a) Five of the seven statements to which Appellant asserts trial counsel should have objected were on pages 18 to 21 of the interview transcript, which is part of the interview to which counsel *did* object at trial. Because counsel did in fact object on the same grounds now asserted, those statements cannot be the basis for an

15

ineffective assistance claim. See *Slaton v. State*, 303 Ga. 651, 653 (814 SE2d 344) (2018) (explaining that a claim that counsel performed deficiently based on counsel's failure to perform in a particular way lacks merit where counsel actually performed in that way).[9]

(b) The two remaining statements were as follows. First, Detective McClure said to Appellant, "Your mom said you weren't living here. She wouldn't let you stay here 'cause you didn't have a job." Appellant replied, "yeah." Second, when discussing further treatment for his gunshot wound, Appellant said, "I was supposed to go [to the doctor] yesterday but I don't have no insurance."

As to the first statement, Appellant's unemployment was relevant to his motive for the charged armed robbery. See *Priester v. State*, 309 Ga. 330, 333 (845 SE2d 683) (2020) (explaining that evidence regarding a lull in the appellant's drug-dealing business was relevant to his motive for attempting to rob the victim). And the

---

[9] Appellant does not enumerate as error the trial court's ruling on the objections that trial counsel made.

statement that Appellant could not live with his mother and did not have a job was not unfairly prejudicial or improper character evidence. See *Snipes v. State*, 309 Ga. 785, 793 (848 SE2d 417) (2020) (holding that the appellant had not shown how testimony that she "'wasn't working or nothing'" was "evidence of her bad character or otherwise prejudicial"). Thus, an objection to this statement would have failed, and "Appellant's trial counsel did not perform deficiently by failing to make a meritless objection." *Carter*, 310 Ga. at 564.

Trial counsel also did not perform deficiently by failing to object to the second statement. Appellant has not explained how a passing statement about his lack of medical insurance was harmful to him. Instead, at the hearing on the motion for new trial, trial counsel acknowledged that the statement about insurance could have engendered sympathy from the jury because Appellant was unable to continue to have his gunshot wound treated. Thus, a competent lawyer could reasonably have chosen not to object to the statement. See *Jones v. State*, 300 Ga. 543, 546 (796 SE2d 659) (2017) (holding

17

that a reasonable lawyer may decide not to object to statements that may create sympathy for his client). Accordingly, Appellant has failed to show that his trial counsel's performance was deficient.

*Judgment affirmed. All the Justices concur, except LaGrua, J., disqualified.*

Decided June 1, 2021.

Murder. Fulton Superior Court. Before Judge LaGrua.

*Robert J. Beckwith*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Dustin J. Lee, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.

18